Marvin J. LIVINGSTON, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–86–158–CR.

Court of Appeals of Texas,
Fort Worth.

April 16, 1987.

John H. Morris, Gainesville, for appellant.

Phil L. Adams, Dist. Atty., Gainesville, for State.

Before BURDOCK, JOE SPURLOCK, II and HILL, JJ.

## OPINION

HILL, Justice.

Marvin J. Livingston, Jr. appeals his conviction by a jury for the offense of unlawful possession of a firearm by a felon. The jury assessed his punishment at fifteen years in the Texas Department of Corrections. He presents three points of error.

We affirm.

In point of error number one, Livingston urges that the trial court erred in failing to dismiss his indictment because he was unlawfully arrested. The point does not include any complaint of any confession or evidence tainted because obtained as a result of an unlawful arrest. It is allegedly the indictment itself that was tainted. We are not aware and Livingston does not provide us with any authority for his proposition that an unlawful arrest for an offense taints an indictment for that offense. In the absence of authorities, nothing is presented for review. *See McWherter v. State*, 607 S.W.2d 531, 536 (Tex.Crim.App. 1980). We will nevertheless consider the legality of Livingston's arrest.

To make an investigatory stop, a police officer must have specific, articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *Blackmon v. State*, 644 S.W.2d 738, 740 (Tex.Crim.App.1983).

TEX.CODE CRIM.PROC.ANN. art. 14.-01(b) (Vernon 1977) provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

The record reflects that on January 17, 1986, at approximately 11:25 p.m., Lieutenant Johnny Barnett, a Gainesville police officer, received a transmission that a white Volkswagen with Texas license number 989 JFF was involved in an incident of a child being hit with a beer bottle. He subsequently saw the vehicle and saw it stop at the curb. He pulled in behind it, without any flashing lights, and approached the driver, Livingston. Livingston exited the vehicle. As he spoke with Livingston, the officer observed that Livingston was erratic in his movements and speech and that he had the strong ordor of an alcoholic beverage on his breath. Officer Barnett formed the opinion that Livingston was intoxicated and had him arrested for driving while intoxicated.

The record does not reflect that the officer stopped Livingston but merely approached his vehicle after he had stopped himself and gotten out of the vehicle. In any event, the broadcast concerning the assault with the beer bottle constituted sufficient justification for such a stop had the officer made one. *See Blackmon*, 644 S.W.2d at 738.

Since Officer Barnett personally observed Livingston driving the vehicle and personally observed his state of intoxication, he was authorized to arrest Livingston without a warrant pursuant to TEX. CODE CRIM.PROC.ANN. art. 14.01. *See Warrick v. State*, 634 S.W.2d 707, 709 (Tex.Crim.App.1982). We overrule point of error number one.

In point of error number two, Livingston argues that the trial court erred by admitting five bullets into evidence.

Sergeant David Wisian of the Gainesville Police Department identified State's Exhibit No. 3 as five .38 special caliber Federal cartridges which he obtained from Livingston's right front pocket. He said he put them in an envelope along

with the unloaded Charter Arms .38 caliber two inch blue steel revolver which had fallen out of Livingston's pants leg onto the floor of the patrol car that had taken him to jail. The officer testified that the bullets were not marked, but that he had logged them in on the property receipt and that they had been kept at the police department since then. The court overruled Livingston's objection to the admission of the bullets, which objection was made on the ground that the bullets could not be identified. In the absence of a showing of tampering, even an objection that the State has failed to establish the proper chain of custody goes to the weight of the evidence rather than its admissibility. *See Bird v. State*, 692 S.W.2d 65, 70 (Tex.Crim.App. 1985). Even if the admission of the bullets into evidence were error, we find that it was harmless error beyond a reasonable doubt in view of the fact that evidence that five such bullets were found in Livingston's pocket was already before the jury without objection. We overrule point of error number two.

In point of error number three, Livingston maintains that the trial court erred in denying his motion for instructed verdict because the evidence was insufficient to prove that the pistol introduced into evidence as State's Exhibit No. 2 was a firearm, and the evidence was insufficient to prove that Livingston possessed a firearm away from his residence.

In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the verdict. *See Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex. Crim.App.1983) (opinion on reh'g).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *Id.*

■ For purposes of the offense for which Livingston was convicted, TEX.PENAL CODE ANN. sec. 46.01(3) (Vernon 1974) defines "firearm" as:

[A]ny device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. Firearm does not include antique or curio firearms that were manufactured prior to 1899 and that may have, as an integral part, a folding knife blade or other characteristics of weapons made illegal by this chapter.

*Id.* At trial, State's Exhibit No. 2 was identified as a "Charter Arms .38 caliber two inch barrel revolver." As previously noted, five .38 special caliber Federal cartridges were found in Livingston's pants pocket. In his brief, Livingston acknowledges that State's Exhibit No. 2 was a pistol. A "pistol" is defined as "a short *firearm* intended to be aimed and fired with one hand." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1724 (1981) (emphasis added). The same dictionary defines "revolver" as "a *handgun* having a cylinder of several chambers that are brought successively into line with the barrel and discharged with the same hammer." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1945 (1981) (emphasis added). "Handgun" is defined by section 46.01 as "any *firearm* that is designed, made, or adapted to be fired with one hand." TEX.PENAL CODE ANN. sec. 46.01(5) (Vernon 1974) (emphasis added). The jury had the legal definition of firearm before it as well as the revolver itself. We find that the evidence was sufficient to prove that State's Exhibit No. 2 was a firearm.

Lieutenant Barnett testified that when he first observed the vehicle Livingston was driving, he saw it proceeding north on Grand Avenue and that he then saw it turn right on Scott Street. He first saw Livingston when he got out of the driver's side of his car on Scott Street. Livingston was transported to jail from the place of his arrest, the sidewalk on Scott Street. There apparently was a house nearby. As we have previously noted, the pistol fell out of his pants leg while Livingston was sitting in the patrol car prior to being taken into jail. We find this evidence sufficient to show that Livingston possessed the pistol away from the premises where he lived. *See Bradley v. State*, 655 S.W.2d 256, 258–59 (Tex.App.—Corpus Christi 1983, no pet.). We overrule point of error number three.

The judgment is affirmed.