**Dock Junior SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 856–85.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 12, 1987.

Morris L. Overstreet, Amarillo, for appellant.

Bill Baumann, C.A., Amarillo, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

Dock Junior Smith, hereinafter appellant, was convicted by the jury of evading arrest, to-wit: intentionally fleeing from Leslie Nivens, an Amarillo Police Officer, while Nivens was *attempting to arrest him.* See V.T.C.A., Penal Code, § 38.04. The jury also assessed appellant's punishment at 45 days' confinement in the Potter County Jail and a $300 fine, and recommended that the fine only be probated, which recommendation the trial judge followed.

The charging instrument in this cause does not allege what offense appellant had previously committed for which Nivens wanted to arrest him. However, under V.T.C.A., Penal Code, § 38.04, the applicable penal statute, this is not an element of the offense. § 38.04 merely provides that a person commits the offense of evading arrest if he intentionally flees from a person he knows is a peace officer *attempting to arrest him.*[1]

On direct appeal, appellant challenged the sufficiency of the evidence to sustain his conviction under § 38.04, supra. The Amarillo Court of Appeals agreed with appellant, holding that the act of fleeing *an investigatory stop by a police officer is, standing alone, not a criminal offense,* and ordered the conviction reversed and the cause remanded to the trial court with instructions to enter a judgment of acquittal. See *Smith v. State,* 704 S.W.2d 791 (Tex. App. 7th 1985).

We granted the petitions for discretionary review that were filed on behalf of the State by the State Prosecuting Attorney and the local District Attorney in order to determine whether the court of appeals correctly held that the evidence was insufficient to sustain the jury's verdict. Finding that we are in agreement with the court of appeals' conclusion, we will affirm its judgment that reversed the trial court's judgment of conviction.

The record reflects that during argument on appellant's motion for instructed verdict

---

1. See *Alejos v. State,* 555 S.W.2d 444 (Tex.Cr. App.1977), for a discussion of the elements of this offense, and *Jackson v. State,* 718 S.W.2d 724 (Tex.Cr.App.1986), for a discussion of what must be pled in the charging instrument. "The gravamen of the offense is the evasion of an arrest, not the evasion of a police officer." *Jackson,* supra, at 726, quoting from the court of appeals' decision in that cause.

in the trial court the prosecuting attorney candidly admitted to the trial judge that "[W]ithout this Blackmon case [*Blackmon v. State*, 644 S.W.2d 738 (Tex.Cr.App. 1983)], we wouldn't be here ..." (Page 49 of Statement of Facts). The trial judge overruled appellant's motion. On appeal, the State vigorously pursued that case as authority for affirming appellant's conviction. The court of appeals rejected *Blackmon*, supra, as being authority for affirming appellant's conviction.

In rejecting the State's argument on appeal that *Blackmon*, supra, controlled the disposition of appellant's contention, that the evidence was insufficient, the court of appeals correctly observed and pointed out the following about what the majority panel opinion of this Court stated and held on original submission in *Blackmon*, supra. No motion for rehearing was filed in *Blackmon*, supra, so the En Banc Court did not act in that cause.

> The State readily admitted to the trial court that it would not have been in court with this case but for *Blackmon v. State*, 644 S.W.2d 738, 740 (Tex.Cr.App. 1983). There is language in *Blackmon* that, on first reading, seems to support the State's position, because the Court of Criminal Appeals pointed out that law enforcement officers are entitled to pursue, and subdue, a person who flees a *Terry* [see *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967)] investigatory stop, just as they may pursue a person who flees an arrest. However, the issue in *Blackmon* was not whether a person violates § 38.04 if he flees an investigatory stop. Instead, the Court was deciding whether the officer had enough information to detain the defendant, and subsequently arrest him, for another crime. The Court did not determine the threshold issue present here, which is whether the act of fleeing an investigatory stop is, standing alone, a crime. Thus, we are not required to apply *Blackmon* to these facts.

> Section 38.04 creates the crime of evading an arrest. It does not create the crime of evading an investigatory stop. Appellant's first ground of error is sustained. (793).

§ 38.04, supra, is clearly written. An offense does not occur unless and until an individual flees from a peace officer who at that moment in time is attempting to arrest him. "The gravamen of the offense is the evasion of an arrest, not the evasion of a police officer." *Jackson*, supra. Given the wording of the statute, and the exception therein, it is obvious that "The intent of this section of the penal code is to deter flight from arrest by the threat of an additional penalty and to further discourage forceful conflicts between police and suspects." *The Explanatory Comment of Branch's Texas Annotated Penal Code*, 3rd Ed., Vol. 3, § 38.04, at page 116. As previously pointed out, under § 38.04, supra, the actual commission of a criminal wrong, i.e., the offense the officer was attempting to arrest the accused for committing, is not an element of the offense. In *Alejos*, supra, this Court implicitly held that a person who flees from a peace officer *who has probable cause to arrest him* for committing some criminal offense may be found guilty under § 38.04.

■ We find that the issue here is whether the statute is violated when an individual flees from an officer who is *not* attempting to arrest him but is only attempting to stop him for investigation purposes. The court of appeals found that the statute was not violated in that instance. We agree with that holding.

The facts reflect that Nivens, the police officer who ultimately arrested appellant, who was the only witness to testify for the State at the guilt stage of the trial, testified that he was dispatched and went to the Tip Top Club in Amarillo to investigate a reported disturbance resulting from a fight that had apparently occurred inside of the club. No testimony was presented that related to the fight. Nivens candidly admitted when he testified that he could not state what had taken place inside of the Tip Top Club before he arrived at that location,

either by way of personal knowledge or hearsay. Nivens testified that after he arrived and parked his police car in front of the club, he got out of the car and went to the front of the club where he came into contact with three females he did not know and who he could not say were credible persons. At this time there were approximately 15 to 20 persons standing outside. Nivens testified that while he was speaking with the three females, "the door of the bar [sic] came open and Mr. Smith [appellant] was standing in the doorway. And at this time, the three women said, "He has a gun." [Nivens admitted in his testimony that the women did not tell him how they knew that appellant then had a gun. No gun was then visible.] And at the time, Mr. Smith took off running." After a brief chase, with Nivens hollering at appellant several times during the case "Halt, police!", Nivens ultimately stopped appellant, and, after he had concluded that appellant was intoxicated, he arrested appellant for that offense. A search of both appellant and the area by Nivens failed to turn up any kind of weapon, especially a gun. On cross-examination, Nivens testified that he could not swear under oath that the Tip Top Club was licensed to sell alcoholic beverages, although his testimony strongly suggested that based upon what he had heard he believed that it was a licensed premises.

Officer Nivens also admitted in his testimony that if "we had found the gun" he would have arrested appellant for unlawfully carrying a weapon; that he chased appellant only "to see if he had the gun ... [and] I wanted to talk to him to see if he did have a gun." Officer Nivens further testified that after he arrested appellant nearby where the club was located for being intoxicated in public appellant did not evade him or attempt to flee from him. As previously pointed out, no gun was ever found, either on appellant's person or in the area.

Earlier we said the statute is clearly worded. To the extent that it clearly in-

forms one of the elements of the offense it is. Nevertheless, we find that the statute is deficient in one particular and that is it fails to expressly inform the reader what kind of "arrest" is required. The term "arrest" is not defined in the Penal Code. The provisions of Art. 15.22, V.A.C.C.P., only inform us of *when* a person is arrested: "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." As previously pointed out, the statute does not have as an element thereof the offense for which the peace officer was attempting to arrest the accused; the statute merely states that it is an offense if the person intentionally flees from a person he knows is a peace officer "attempting to arrest him." There is also no requirement in the statute that the arrest be lawful. The statute, however, does provide that "It is an exception to the application of this section that the attempted arrest is unlawful." V.T.C.A., Penal Code, § 2.02, states; "(a) An exception to an offense in this code is so labeled by the phrase: 'It is an exception to the application of....'" Subsection (b) provides: "The prosecuting attorney must negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception."

Therefore, given the plain terms of § 38.04, supra, and § 2.02, supra, to establish the offense of evading arrest, it is incumbent upon the prosecution to plead and prove the elements of the offense and to also prove "that the defendant or [his] conduct does not fall within the exception", which in this instance is that the attempted arrest was not unlawful. Thus, under the exception within the statute, if the attempted arrest is unlawful, there can be no offense of evading arrest.

■ It is axiomatic in this State that warrantless arrests may occur only in the most limited of circumstances, and the

power to make a warrantless arrest is governed by statutes as well as case law on the subject. For a further discussion on this subject, see, for example, *Green v. State*, 727 S.W.2d 263, 265, 267 (Tex.Cr.App.1987). Also see *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Heath v. Boyd*, 141 Tex. 569, 175 S.W.2d 214 (1943); *Giacona v. State*, 164 Tex.Cr.R. 325, 298 S.W.2d 587 (Tex.Cr.App.1957); *Burton v. State*, 152 Tex.Cr.R. 444, 215 S.W.2d 180 (1948). Furthermore, it has long been the law of this State that in order for a warrantless arrest to be justified, the State must show the existence of probable cause at the time the arrest was made and the existence of circumstances which made the procuring of a warrant impracticable. Where probable cause to arrest is lacking, the challenged arrest will not be upheld merely because the exigencies of the situation precluded the obtaining of a warrant of arrest. Of course, the fruits of an arrest will never cause the initial arrest to be lawful. The lawfulness of the arrest is determined at the moment it takes place. Probable cause for an arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent person in believing that a particular person has committed or is committing a crime. See, for example, *Brown v. State*, 481 S.W.2d 106, 109, 110 (Tex.Cr.App.1972).

■ We have carefully examined Chapter 14 of the Code of Criminal Procedure which authorizes warrantless arrests, but do not find therein where any of the listed statutory exceptions might be applied to this case. Appellant was never shown to have been committing a felony, a misdemeanor, or an offense against the public peace in the presence or within the view of Officer Nivens. There is no evidence that might reflect or indicate that when Officer Nivens first saw him the appellant was located in a suspicious place and under circumstances which might have reason-

ably shown that he was guilty of some felony or breach of the peace, or was threatening or was about to commit some criminal offense. There is no claim that appellant had earlier committed any assault, or that he had committed an assault resulting in bodily injury to anyone. There is no court order implicated in this cause. There is no evidence that might have shown that it was represented to Officer Nivens by a credible person that appellant had committed a felony and that he was about to escape.

Therefore, under Chapter 14 of the Code of Criminal procedure, Nivens had absolutely no lawful authority to arrest appellant without a warrant.

In *Glass v. State*, 681 S.W.2d 599, 601 (Tex.Cr.App.1984), this Court pointed out that "an anonymous telephone call ..., standing alone, will never provide sufficient facts that would authorize a warrantless arrest ..., which is, per se, unreasonable ... Something more is required before probable cause to make a warrantless arrest ... is shown to exist ..." (601).

Given the facts of this case, the information that Officer Nivens had when he first came into contact with appellant was, for purposes of establishing probable cause to arrest, no better than if the females had made an anonymous telephone call to him and told him that there had been a fight inside the club and that appellant had a gun. This is because none of the three females told Officer Nivens that appellant had been involved in the fight that apparently had occurred inside of the club and none of them told Officer Nivens how they knew that appellant then had a gun. Also, it was never established that any of the females was shown to be a credible person. There is no evidence that when Nivens first came into contact with appellant, he, appellant, was then committing any criminal wrong.

■ It is true that under our case law a police officer may in appropriate circumstances and in an appropriate manner ap-

proach a person for purposes of investigating possible criminal behavior or activity even though there is no showing that probable cause to make an arrest of the individual was then extant. This is normally referred to as having probable cause to investigate or probable cause to make a "Terry stop". See, for example, *Brown v. State*, supra; *Terry v. Ohio*, supra. However, the inarticulate hunch, suspicion, or good faith of an arresting officer is insufficient to constitute probable cause to arrest. *Brown v. State*, supra. Thus, even though the law gives to peace officers the right to make an investigatory stop of an individual, this right is conditioned that at that time the officer must have "probable cause to investigate", which exists only where the circumstances indicate that the particular person either has committed or is preparing to commit a crime. "However, the inarticulate hunch, suspicion, or good faith of the investigating officer is never sufficient to justify a police officer to [make an investigatory stop]." *Glass*, supra, at 601. Therefore, in order to justify temporarily detaining a person for the purpose of conducting a criminal investigation, where the officer does not have probable cause to make a warrantless arrest, he must still have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen. For further discussion on this point, see, for example, *United States v. Brignoni–Ponce*, 422 U.S. 873, 880–881, 95 S.Ct. 2574, 2579–2580, 45 L.Ed.2d 607 (1975); *Dickey v. State*, 716 S.W.2d 499 (Tex.Cr.App.1986); *Stone v. State*, 703 S.W.2d 652 (Tex.Cr.App.1986); *Anderson v. State*, 701 S.W.2d (1985); *Glass*, supra; *Johnson v. State*, 658 S.W.2d 623 (Tex.Cr.App.1983); *Williams v. State*, 621 S.W.2d 609 (Tex.Cr.App.1981).

In this instance, we need not consider whether Officer Nivens had probable cause to chase and stop appellant in order to investigate whether appellant had a gun because § 38.04, supra, requires that the officer who is chasing the defendant must have *probable cause to arrest him.* If the officer only has probable cause to make an investigatory stop, there can never be a violation of § 38.04, although if the officer succeeds in temporarily detaining an individual, or in the course of attempting to temporarily detain the individual, he sees a crime being committed in his presence or within his view he may make a warrantless arrest pursuant to Art. 14.01(b), V.A.C.C.P. ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.") To the extent that this Court's majority panel opinion of *Blackmon v. State*, supra, can be read to reflect the contrary, it is expressly overruled.

■ In this instance, appellant was on trial for committing the offense of evading an arrest. He fled when Officer Nivens was attempting to make an investigation in order to determine whether a crime had been committed either inside of the place or whether appellant was committing a crime by unlawfully possessing a gun. Officer Nivens, however, candidly admitted in his testimony that he was not going to arrest appellant unless he found appellant in possession of a gun; he was only chasing appellant in order to make an investigation to see if appellant had committed the crime of unlawfully possessing a gun. § 38.04, supra, however, requires that before a violation of that statute can occur, when the individual flees from the officer, the officer must then be *attempting to arrest him.* Officer Nivens, by his own testimony, never attempted to arrest appellant until he concluded that appellant was intoxicated. Therefore, Officer Nivens' actions in chasing appellant to investigate in order to make the determination whether appellant was committing or had committed a criminal wrong, though perhaps sufficient to enable him to stop appellant in order to make a criminal investigation, were insufficient to establish that he had probable cause to arrest appellant when he commenced chasing him, which was a necessary element of the offense.

The State clearly failed to prove that § 38.04, supra, was violated by appellant and the court of appeals correctly so held.

The judgment of the court of appeals is affirmed.

DAVIS, McCORMICK, CAMPBELL, and WHITE, JJ., concur in the result.